Judge Mills
delivered the opinion of the court.
The heirs of William Lindsay, who was sole heir of Arthur Lindsay, deceased, filed their bill in chancery in the court below, against the trustees of Lexington; in which they claim that six hundred and forty acres of land on which said town was situated, was laid off into lots and streets, together with thirty acre more, purchased by the settlers, adjoining the above quantity: That the settlers in said town agreed among themselves that each inhabitant should be entitled to one in lot and one out-lot, in the town: That in the year 1779, many of the lots were appropriated among the settlers by a lottery; and in the year 1780, many more were assigned to individuals, under which, arrangements the lots have ever since been held. That their ancestor. Arthur Lindsay, was a settler in the town in the year 1779; and that in 1783 he was killed by the Indians: That he was entitled to an in and out-lot in common with the rest: That William Lindsay , sole heir to Arthur, and immediate ancestor of the complainants, died shortly after him, leaving the complainants infants: That they had made some enquiry about the out-lot, and that when they became old enough to investigate the business, and had applied to the trustees for information—they found, their records incomplete, and some of them lost: and that the trustees, not finding any lot assigned to said Arthur Lindsay, would not convey any. That they received information that said Arthur had drawn an out lot near to the one drawn by Joseph Lindsay, and that they found such a lot unappropriated, and that all others were appropriated: That they accordingly took possession of it, being numbered 89 on the town plat, and held it ever since, and had never been able to find any other claim to it; but that the trustees refused to convey, and threatened to turn them out of possession. They therefore pray a conveyance of lot No. *444 89—or, if not this, some other, in satisfaction of the claim set up, if any other can be found
The heirs of a lager who was entitled to a donation lot under the act of 1779 may coerce a title from the trustees, if there be any unappropriated lot.
The trustees deny any knowledge of the merits of the claim, and put the complainants upon the proof of it:—They rely on the lapse of time and staleness of the transaction to bar the claim, and rest on the forfeiture of the claim for nonpayment of taxes, or noncompliance with certain conditions imposed by the trustees on the holders of lots. An original article between the settlers of the town is produced and filed, and proved to be genuine, to which Arthur Lyndsay’s name is attached among the rest In which the settlers agree to divide the ground into in-lots of one half acre, and out lots of five acres each, at the joint expense of the inhabitants; and that when they were numbered, lots should be drawn to appropriate them, and none were to draw except he was an inhabitant, or had raised a crop of corn. That each holder of the half acre lot should clear it by the first of June succeeding. Some, who had taken former appropriations, were to throw up, and abide by the lot, and if the out lots could not be laid off by reason of danger from the savages, they were to clear promiscuously till it could be done. This agreement was dated in January, 1780. The court below decreed a conveyance of the lot No. 89—from which decree the trustees have appealed to this court.
Lexington, at the origin of this claim, appears to have been a village, or, in the language of that day, a station, where numbers had fixed their residence together for their mutual safety. For such the legislature of Virginia provided, by securing to them an interest in the lots which might in future be laid off, by directing that when persons had settled themselves in villages or townships, under an understanding that a tract should, as a town, be divided among them, the quantity of six hundred and forty acres should be reserved clear of appropriation, for the use of the settlers, until the true state of the case should be laid before the legislature. 1 Litt. 396. The inhabitants of Lexington acted accordant to the provisions of this law in making the agreement between themselves; and of this agreement the legislature were, no doubt, apprised, when, in May, 1782, they passed the act for the establishment of the town; and they refer to it in the preamble of the act. See 2 Litt. 549 They then proceed to vest the land in trustees, and to direct them to make conveyances to the *445 settlers, agreeable to the conditions of the contract, and then direct them to sell the part not theretofore laid off and appropriated to settlers. Arthur Lindsay is proved to have been a settler there, and he is recognized in said agreement by the other settlers as one entitled to a share in the town as a setler. Although his interest was not then demarked yet it was an undivided interest, capable of devise, alienation or descent. This court has decided that a right vested by the proclamation of the king of Great Britain, although the demarkation was not made at the time of the devise to have passed by will, which was an interest, not more certain, if as much so as that of Arthur Lindsay in the present case. Gist’s heirs vs. Robenett, 3 Bibb. 2.
Trustees cannot urge the lapse of time against the cestui que trust.
Arthur Lindsay died in the year 1782, and his heir at law not long after, and it does not appear any allotment was made to him. It is proved that a lot was called by his name; but which that was, is wholly uncertain. By the books of the trustees, which have been used by the court below, and were brought before this court, it appears that the lots contiguous to the one in question were appropriated. But it is highly probable he died in 1782, that his lot never was drawn and his heir at law, might during the time he survived him, have been ignorant of his rights, and it is probable that the in lot was the one called after him.
As to the conditions relied on, which is said by the answer to be imposed by taxation, or by order of the board, on examining the books of the trustees, we find no conditions imposed, and no orders of forfeiture embracing the lot in question. The condition imposed by the agreement of the settlers, embrace only the in-lots, and cannot affect the right of the present claimants to the lot in question.
As to lapse of time, and staleness of the transaction, it is amply accounted for by the two descents cast on persons probably ignorant of their title, and also by the infancy of the present complainants, which operate as circumstances excusing the delay. But if this was insufficient to ward off the calculation of so many years, it would be hard to prove that lapse of time applied to the present case. This is a controversy solely between the complainants and their own trustees. No claimant here presented himself to set up an adverse claim to the ground. The trustees, it is true, are created by statute; but they are no less trustees, nor have they any greater right to hold against the complainants than if they had been created by contract. The *446 title is vested in them; but for what purpose? Not for their individual benefit, but to, be held by them first for the satisfaction of the claims of the settlers, and then to sell the residue for the common benefit. They had the power of demarkation and allotment in their own hands till the settlers were satisfied. This allotment they never made to the complainants, it is true; but still their tenure for the use of the complainants continuos to this day and as they were not bound to any hour of allotment, or the complainants subjected by law to any forfeiture of the demand, because they did not demand it at any certain period, lapse of time cannot affect their right, or excuse the compliance of the defendants when demanded.
Haggin for appellants, Humphries lor appellees.
But one difficulty remains, and that is, the allotment to the appellees of the lot in question: for, as before observed, there is no proof that the present lot was ever assigned to them. But as they have alledged that there is no other, which is unappropriated, and the trustees, who ought to have the means of knowing, do not alledge or shew that there is any other which can be given them, or which can be submitted to lot with the present one; which, according to the original agreement, is the proper mode of deciding which one, in case of a plurality of lots, we concur with the court below, that they ought to have this one, as that alone which can satisfy their claim. Upon the whole, the decision of the court below must be affirmed with costs.